**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

......................................................................X

In re:                                                              Chapter 11

4921 12th Avenue, LLC,                          Case No. 18-47256-

                          Debtor

......................................................................X

Mark Frankel as Plan Administrator for
4921 12th Avenue LLC,

                          Plaintiff,            Case No. 19-01120-cec

        -against-

Yehuda Salamon, David Salamon, Yidel's
Shopping Cart, Inc, E-Commerce Expand,
LLC, Yidel's Online Food Station, LLC, Yidels
Shopping Cart, Inc. d/b/a Riverstone Group,
Riverstone USA, LLC and "John Doe 1 through
John Doe 10, the last ten names being fictitious
And unknown to Plaintiff, person or persons
intended Being persons, corporations or others,
being the current And former tenants or
occupants of the Debtor's real Property located
at 4917-4921 12th Avenue, Brooklyn, New
York,

                          Defendants.

…………………………………………………..X

### Notice of Motion to Dismiss the Complaint[1]

Yehuda Salamon, Yidel's Shopping Cart, Inc, E-Commerce Expand, LLC,

Yidel's Online Food Station, LLC, Yidels Shopping Cart, Inc. d/b/a Riverstone

---

[1] This motion is filed solely for the reason of meeting technical compliance with the
bankruptcy court direction. This jurisdictional aspect of the bankruptcy court over New York
state law fraudulent conveyance, even for the purposes of submitting findings of fact and
conclusions of law is unclear, especially in the light of demanded article III adjudication by
the defendants.

1

Group, Riverstone USA, LLC (Salamon & Companies) hereby moves (this "Motion") moves to dismiss the complaint for lack of jurisdiction and standing. The Motion is based on the attached Memorandum of Points and Authorities, the files and records of the referenced matters, the Chapter 11 Plan Confirmation and such other and further matters as this Court may consider at or before any hearing on this Motion.

A hearing has been scheduled before the presiding Judge Hon. Carla E. Craig, the Chief Judge, United States Bankruptcy Court, Eastern District of New York, 271-C Cadman Plaza E, Brooklyn, NY 11201 on January 22, 2020 at 3:00 PM.

Dated: November 21, 2019
    New York NY

Dahiya Law Offices, LLC
Counsel for Salamon & Companies
*/s/karamvirdahiya*
Karamvir Dahiya
75 Maiden Lane Suite 506
New York NY 10038

**Notice to:**
Mark Frankel, mfrankel@bfklaw.com
David K. Fiveson, dfiveson@bffmlaw.com
BUTLER, FITZGERALD, FIVESON
&McCARTHY,
Attorneys for Plaintiff, Mark Frankel as Plan
Administrator for Debtor
Nine East 45th Street - Ninth Floor
New York, New York 10017
(212) 615-2200

The defendants, Yehuda Salamon, Yidel's Shopping Cart, Inc, E-Commerce Expand, LLC, Yidel's Online Food Station, LLC, Yidels Shopping Cart, Inc. d/b/a Riverstone Group, Riverstone USA, LLC (Salamon & Companies) respectfully moves pursuant to Rule 12, dispositive motion for dismissal of the case.  The Adversary Proceeding is against non-debtor and third parties with claims based on New York state fraudulent conveyances causes of action. **Ex. A.** (The Adversary Complaint). And a confirmed Chapter 11 Plan has been used as vehicle to create subject matter jurisdiction. **Ex. B.**

The defendants invoke the right to have an article III adjudication of their dispute and since this is a dispositive[2] motion along with the fact that the case calls for consideration and interrelationship between the Bankruptcy Code and the federal non-bankruptcy laws regulating organizations or activities affecting interstate commerce, the withdrawal of reference here is mandatory under 28 U.S.C. § 157 (d) and pursuant to article III strictures.  However, owing to the confusion extant in this field, the defendant exercising caution have filed this motion with the bankruptcy court, though the district court has already granted a briefing schedule on this motion to dismiss.

The adjudication of the adversary in the bankruptcy court is constitutionally infirm.  The entire claims of the Adversary Complaint are state based claims namely New York's Debtor and Creditor Law (the "DCL"). These are state claims. The asserted adjudication in the bankruptcy court does not fall within the "exceptional

---

[2] Even under the adjunct theory, the magistrates are not allowed to adjudicate dispositive motions, and this is a dispositive motion, as it argues lack of jurisdiction and serious interpretation of the Bankruptcy Code and federal jurisdictional statutes.

categories identified by the Northern Pipeline plurality (involving territorial courts, military tribunal and public rights) or with its "adjuncts" theory. *Northern Pipeline Construction Company v. Marathon Pipe Line Company,* 458 U.S. 50 (1982). See also, *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1967 (2015) (Thomas, J., dissenting) ("Bankruptcy courts clearly do not qualify as territorial courts or courts-martial, but they are not an easy fit in the 'public rights' category, either."); *Stern v. Marshall*, 131 S. Ct. 2594, 2621 (2011) (Scalia, J., concurring) (noting that bankruptcy does not fall within any of the exceptions to Article III, including public rights);

*Second,* the defendants do not consent to the bankruptcy court adjudication of this dispute. *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 847 (1986). See *Wellness International Network Ltd. v Sharif*, 135 S. Ct. 1932 (2015) (holding that the bankruptcy courts may hear and decide questions of private right with the knowing and voluntary consent of the parties). Once again, the defendants do not consent to an non-article III adjudication.

*Third* the dispute here or its outcome is not bound up with any integrated regulatory scheme, they are independent state based private rights issues. *Thomas v. Union Carbide Agric. Prods. Co*., 473 U.S. 568 (1985). See also, *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 54  (1989) ("The crucial question, in cases not involving the Federal Government, is whether 'Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited

involvement by the Article III judiciary.'").

*Fourth,* the defendants hereby invokes their right to a jury trial if the case is not dismissed by the District Court.  The Article III and Seventh Amendment test is co-extensive. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989)

*Fifth,* the DCL claims are non-core, "inherently judicial" private rights issues, drawing in "the structural component of article III.  See *Stern, Schor*, and *Northern Pipeline*. In *Granfinanciera,* the Supreme Court rejected the suggestion that actions to recover fraudulent conveyances, which are incorporated in the Bankruptcy Code, transformed the existing private right to such actions under state law into "public rights" that could be adjudicated by bankruptcy courts without consent of the parties. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. at 51–52. Congress did not "create a new cause of action, and remedies therefor, unknown to the common law." Id. at 60 (quoting *Atlas Roofing Co., Inc. v. Occupational Safety & Health Review* Comm'n, 430 U.S. 442, 461 (1977)). "Rather, Congress simply reclassified a pre-existing, common-law cause of action that was not integrally related to the reformation of debtor-creditor relations." *Granfinanciera*, 492 U.S. at 60.  It was a "purely taxonomic change" that did not alter the underlying nature of the right. *Id*. at 61.

*Sixth,* the bankruptcy case is over, bankruptcy estate is over, the Chapter 11 Plan has been confirmed. The bankruptcy court cannot exercise subject matter jurisdiction on the Adversary Proceeding.  "When a Chapter 11 plan is confirmed, however, the estate ceases to exist, and the debtor loses its status as debtor-in-

possession along with its authority to pursue claims as though it were a trustee." *In re SI Restructuring Inc.,* 714 F.3d 860, 864 (5th Cir. 2013).

The request for withdrawal of reference satisfy both the discretionary and mandatory withdrawal of reference standards. The cause to withdraw the reference is well established, as the parties have the invoked right to be heard by an article III court. Second, the mandatory withdrawal is warranted here the resolution of the matter requires the consideration of both Title 11 and other US non-bankruptcy laws regulating organizations or activities affecting interstate commerce. 28 U.S.C. § 157 (d). The foregoing arguments raises serious constitutional issues regarding the continued retention of jurisdiction by the bankruptcy court, for the defendants do not consent to its jurisdiction and further invoke the right to an article III adjudication and also serious structural issues are implicated here, as these are private claims given to a legislative court where presiding judicial officers are not adjunct[3] to the district court, rather are full-fledged court whose orders are self-enforceable, and from where appeals are taken to the district court. Appeals might provide a *denovo* review, however that is not a *denovo* hearing. See *Crowell v. Benson* 285 U.S. 22 (1932) (Upholding constitutionality of a legislative court where it "had only limited authority to make specialized, narrowly confined factual determinations regarding a particularized area of law and to issue orders that could be enforced only by action of the District Court.").

---

[3] The Supreme Court considered and rejected the treatment of bankruptcy courts as "adjuncts" in both *Northern Pipeline*, 458 U.S., at 84–86 (plurality opinion); id., at 91 (Rehnquist, J., concurring in judgment) and *Stern v. Marshall*, 564 U.S. 462, 500-501 (2011).

These filing of the adversary proceeding in the bankruptcy court and its asserted jurisdiction raises serious questions and interpretation of the Bankruptcy Code and article III [clearly a federal non-bankruptcy law regulating organizations (courts here)]. "[T]his Court must withdraw the reference . . . because resolution of this matter necessarily requires . . . consideration of the interrelationship between the Bankruptcy Code and federal non-bankruptcy laws regulating organizations or activities affecting interstate commerce, . . . ." *In re Calpine Corp.,* No. 1:05-cv-10861-RCC (S.D.N.Y. Dec. 30, 2005). The Adversary Complaints is based on bank wire transfer of monies which also clearly satisfies the activities affecting interstate commerce. The test regarding "activities affecting interstate commerce" is very liberal and is given a wider interpretation, for instance in case of civil RICO. See, e.g., *Jund v. Town of Hempstead*, 941 F. 2d 1271 (2d Cir. 1991) ("[ i] f the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act" and, therefore, to support a RICO claim). Also the wordings  "the laws of the United States regulating organizations," clearly subsumes the court setups and hierarchies as regulated under Title 28 and article III.

The issues of continued viability of the bankruptcy court retention of jurisdiction, article III restrictions implicate important aspects of separation of power and structural issues.

**This Court lacks Subject Matter Jurisdiction**

Both this Court and the bankruptcy court lacks subject matter jurisdiction and the plaintiff here, Mark Frankel as Plan Administrator for 4921 12th Avenue LLC. ("Frankel") lacks standing to bring this Adversary Complaint.

The "[f]ederal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986). Subject matter jurisdiction (which is defined by Article III and the authorizing statutes enacted by Congress) and constitutional standing (which is derived directly from the "case-or-controversy" requirement of Article III, Section 2, Clause 1) are the essential, unwaivable prerequisites to the exercise of federal judicial power. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701–02 (1982) (subject matter jurisdiction); *United States v. Hays*, 515 U.S. 737, 742–43 (1995) (standing). Unless a party seeking to bring a suit in federal court demonstrates subject matter jurisdiction and standing, the presumption is that the court lacks jurisdiction. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (subject matter jurisdiction); *Bender*, 475 U.S. at 546 (standing). The inviolate rule that these Article III prerequisites to suit be met ensures the "separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101(1998).

**Bankruptcy Jurisdictional grant does not support the state claims**

Section 1334 of Title 28, establishes two main categories of bankruptcy matters over which the district courts have jurisdiction: "cases under title 11," 28 U.S.C. § 1334(a), and "proceedings arising under title 11, or arising in or related to cases under title 11," 28 U.S.C. § 1334(b). Section 157 of Title 28 permits the district courts to refer to bankruptcy courts all "proceedings arising under title 11 or arising in or related to cases under title 11. This permission is rather a blanket order from the district courts. The district courts have done so through standing orders of reference in effect in every district. In reality all cases are filed and fought in the bankruptcy court and there is no individuated reference.

For the Bankruptcy Court to have the instant Adversary Proceeding properly before it, the entire DCL claims must "arise under," "arise in," or "relate to" a case under title 11. Here unfortunately they do not. The DCL claims are not borne of Bankruptcy Code, rather they are from state laws. *Wood v. Wood (In re Wood),* 825 F.2d 90, 96 (5th Cir. 1987) ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11."). Similarly, the DCL claims are not something that "arises in" only in the bankruptcy proceeding. They are independently used by the creditors against the debtors and are not implicated only in bankruptcy cases. Thus, DCL claims are neither "arising under" nor "arising in" for satisfying section 1334.

The last left jurisdiction granting provision is "related to" prong of 1334. "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could

9

conceivably have any effect on the estate being administered in bankruptcy."
(emphasis omitted) *Celotex Corp. v. Edwards*, 514 U.S. 300, 307
(1995)(citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)).  And this
"related to" jurisdiction "cannot be limitless."  *Celotex*, 514 U.S. at 308. There is
no estate anymore.  The bankruptcy case is technical open, the plan has been
confirmed and estate closed.

"[T]wo things are necessary to create [federal] jurisdiction .... The
Constitution must have given to the court the capacity to take it, and an act of
Congress must have supplied it ... ."" *Finley v. United States,* 490 U.S. 545, 548
(1989) (emphasis omitted) (citing *The Mayor v. Cooper*, 6 Wall. 247, 252 (1868)).

This "related to" jurisdiction, as stated, supra, is not something without
limits. *See Celotex Corp. v. Edwards,* 514 U.S. 300, ——, 115 S.Ct. 1493, 1498,
131  L.Ed.2d  403  (U.S.1995)  (stating  that  "[t]he  jurisdiction  of
the bankruptcy courts ... is grounded in and limited by statute"); *Finley*  at 549, 109
S.Ct. at 2007 (will not read jurisdictional statutes broadly). A "related to"
jurisdiction could only be exercised in tandem with the presence of original
jurisdiction of the case, i.e. there must be a proceeding "arising under" or "arising
in" to pool in "related to" jurisdiction. The Chapter 11 plan here is confirmed, and
the estate closed.  And the lawsuit now is not by a trustee [a federally created entity,
satisfying "original ingredient" element of *Osborn v. Bank of the United States*, 22
U.S. (9 Wheat.) 738 (1824)].  No doubt that in any civil action wherein the District
Courts  have  original  jurisdiction,  the  said  court  shall  have  supplemental
jurisdiction.  And if there is any substantial federal claim, then state "claims must

arise from a common nucleus of operative facts" to establish federal jurisdiction. *United Mine Workers v. Gibb,* 383 U.S. 715, 725-27 (1966). Here it is all a state-based claims—jurisdiction cannot be established, just because a bankruptcy was filed by a non-defendant and it had creditors who wants to sue third parties. No doubt, "neither the convenience of the litigants nor considerations of judicial economy can suffice to justify extension of the doctrine[s] of ancillary [and pendent] jurisdiction.' " *Finley,* 552.

The Chapter 11 Plan was confirmed on July 30, 2019.    Thus, "when a Chapter 11 plan is confirmed, . . . the estate ceases to exist, and the debtor loses its status as debtor-in-possession along with its "authority to pursue claims as though it were a trustee." *In re SI Restructuring Inc.,* 714 F.3d 860, 864 (5th Cir. 2013). And "a debtor can preserve its standing to bring a post-confirmation action on a claim that once belonged to the estate only if the confirmed plan "expressly provides for the claim's 'retention and enforcement by the debtor." Id (quoting 11 U.S.C. § 1123(b)(3)(B)).    Further, "[f]or a reservation to be effective, it "must be specific and unequivocal"—blanket reservations of "any and all claims" are insufficient." *In re SI Restructuring Inc.,* 714 F.3d 860, 864 (5th Cir. 2013) (*In re United Operating, LLC,* 540 F.3d at 355–56).    Here it is not the Debtor-in-Possession or the trustee that brought this proceeding, rather it is the plan proponent.

The Plan based assertion of jurisdiction fails. *Firstly,* the Plan Proponent, did not discretely, specifically and unequivocally reserve the claims. Also there was

no elaboration of the claims or nature of claims. Rather the Confirmed Plan under

the rubric of Preservation of Claims states the following:

> 92. All Causes of Action, including rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate, provided, however, that the Plan Administrator shall have sole authority for prosecuting any such claims.

Chapter 11 Plan, p. 19.  In terms of Jurisdiction, the Plan claims:

> 95.  Retention of Jurisdiction. The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not limited to, proceedings: (a) to consider any modification of the Plan under section 1127 of the Bankruptcy Code; (b) to hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157; (c) to hear, determine and enforce all Claims and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code; (d) to hear and determine all requests for compensation and/or reimbursement of expenses which may be made; (e) to value assets of the Estate; (f) To enforce the Confirmation Order, the final decree, and all injunctions therein; (g) to enter an order concluding and terminating the Bankruptcy Case; (h) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order; (i) to determine all questions and disputes regarding title to the assets of the Debtor; (j) to re-examine Claims which may have been allowed for purposes of voting, and (k) to determine objections which may be filed to any Claims.

Ibid at 21. But that is hardly a retention of claims for continued jurisdiction.

*Secondly,* "neither the Plan nor the order confirming it can confer subject matter

jurisdiction on this Court." *Faulkner v. Eagle View Capital Management (In re The*

*Heritage Organization, L.L.C),* 454 B.R. 353, 359 n. 3 (Bankr.N.D.Tex.2011). *See*

*also Binder v. Price Waterhouse & Co, LLP (In re Resorts Int'l, Inc.),* 372 F.3d

154, 161 (3d Cir.2004)("Subject matter jurisdiction 'cannot be conferred by consent' of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization. Similarly, if a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order.").

No doubt,

> despite the routine inclusion of retention-of-jurisdiction provisions in Chapter 11 plans, see Collier ¶ 1123.02, they may be given effect only if there is jurisdiction under 28 U.S.C. § 1334. See *Valley Historic Ltd. P'ship. v. Bank of N.Y.*, 486 F.3d 831, 837 (4th Cir. 2007)("[N]either the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction otherwise is lacking...."); *Binder v. Price Waterhouse & Co.,(In re Resorts Int'l., Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004) (stating that, absent jurisdiction under § 1334, "retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant"); *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) ("[O]rders approving [a] bankruptcy sale [or] ... plan of reorganization ... [cannot] confer jurisdiction. A court cannot write its own jurisdictional ticket.").

*Gupta v. Quincy Med. Ctr.,* 858 F.3d 657, 664 (1st Cir. 2017).  Third, the plan does not describe lacks specificity of the claims,

> The Court disagrees with the Plaintiff and concludes a Plan must specifically describe a cause of action in order to retain "related to" jurisdiction. Compare *AstroPower,* 335 B.R. at 324 (finding sufficient specificity where the Plan specifically retained jurisdiction over claims arising from the Debtor's sale of stock in Xantrax Technology, Inc.), *and LGI,* 322 B.R. at 97 (finding jurisdiction where the plan specifically identified recovery of the casualty loss as an asset to be distributed to creditors), *with Insilco,* 330 B.R. at 512 (finding that while the complaint fell within the broad language of the plan, it lacked the required close nexus because it did "not provide any notice to creditors (or to the Court, for that matter) as to the importance of this or any particular litigation.").

*In re BWI Liquidating Corp.,* 437 B.R. 160, 166 (Bankr. D. Del. 2010). The Plan proponent asserts in the Plan implementation that

> In the event the Property Sale Proceeds are not sufficient to pay all Claims in full with interest from the Petition Date, the proceeds of the prosecution of the Causes of Action by the Plan Administrator shall be an additional

> potential source of Cash to be distributed under the Plan, net of payment
> of Plan Administrator fees and expenses. Such net proceeds of Causes of
> Action proceeds will first be used for unpaid Plan Administrator fees and
> expenses, then in the event Galster or its designee is Purchaser by credit
> bid, to reimburse Galster for Cash paid to fund the Plan, and then paid to
> Creditors in the order of priority provided for in the Plan.

Confirmed Plan, p. 13. However, "the potential to increase assets of the Litigation

Trust and its beneficiaries does not necessarily create a close nexus sufficient to

confer 'related to' bankruptcy court jurisdiction post-confirmation." *Binder v.*

*Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.),* 372 F.3d 154, 162 (3d

Cir.2004). And *lastly,* it is section 1141 of the Bankruptcy Code that which defines

the residual jurisdiction and it confers limited post confirmation jurisdiction solely

for the purpose of implementing the plan. *Neptune Worldwide Moving, Inc. v.*

*Schneider Moving & Storage Co. (In re Neptune World Wide Moving, Inc.),* 111

B.R. 457 (Bankr.S.D.N.Y.1990).

Here the Confirmed Plan did not identify the claims, rather narrated the

statutes, thus the Court does not have jurisdiction even pursuant to the Plan.

Standing here is arguably carved out by the Confirmed Plan. However,

claims belongs to the estate and it is estate representative, a trustee, alone that

should be able bring the claims. Section 544(b) of the Bankruptcy Code confers

upon such trustees the ability to stand in the shoes of the bankruptcy estate's

unsecured creditors and "avoid any transfer of an interest of the debtor in property

or any obligation incurred by the debtor that is voidable under applicable law by a

creditor holding an unsecured claim ..." 11 U.S.C. § 544(b)(1). The Adversary

Complaint is vague in terms of source of standing of the Plaintiff. Article III

standing is an issue of subject matter jurisdiction. *See, e.g.*, *Bender*, 475 U.S. at

541–42; *Young Am. Corp. v. Affiliated Computer Servs.* (ACS), Inc., 424 F.3d 840, 843 (8th Cir. 2005); *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 193 (2d Cir. 2002.

Even if considering, arguendo,[4] that the Plaintiff stepped into the shoes of the trustee and he has as "the representative of the estate . . . capacity to sue and be sued," 11 U.S.C. § 323, it would not confer subject matter jurisdiction with the bankruptcy court. Not even in the district court for that matter.  As is clear that, "the basic rule" drawn in *Deveaux* and *Osborn* that a sue-and-be-sued clause conferring only a general right to sue does not grant jurisdiction to the federal courts. *Lightfoot v. Cendant Mortg. Corp.,* 137 S. Ct. 553, 561, 196 L. Ed. 2d 493 (2017). Mark Frankel, however bonhomie driven efforts there be, just cannot be a trustee for suing here.

This Adversary Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The complaint must adequately allege facts that establish the court's subject matter jurisdiction. More importantly, the court must have the power to hear and decide the case. If a court lacks subject matter jurisdiction, no amount of artful pleading can give it the necessary authority. *Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region*, 558 U.S. 67, 80, 130 S. Ct. 584, 596, 175

---

[4] "Here, the statute appears quite plain in specifying who may use § 506(c)— "[t]he trustee." It is true, however, as petitioner notes, that all this actually "says" is that the trustee may seek recovery under the section, not that others may not. The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision. We have little difficulty answering yes." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S. Ct. 1942, 1947, 147 L. Ed. 2d 1 (2000).

15

L. Ed. 2d 428, 187 L.R.R.M. (BNA) 2673, 158 Lab. Cas. (CCH) P 10130 (2009); *U.S. v. Hartwell,* 448 F.3d 707, 715 (4th Cir. 2006). The Adversary Complaint does not plead enough to establish subject matter jurisdiction and standing of the Plaintiff to the bring this action in this Court. Jurisdiction should be well pleaded. A gaunt expression, as here—"This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157. Plaintiff brings this proceeding pursuant to 544(b)(l), 545, 546, 547, 549, 550 and 553(b) of the Bankruptcy Code," is not enough. See Adversary Complaint ¶ 4. The *Twombly* and *Iqbal* standards would reject this. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). See *Haley Paint Co. v. E.I. DuPont de Nemours & Co.,* 775 F. Supp. 2d 790, 798-99 (D. Md. 2011) (it is "logical" to "appl[y] the pleading standards [of *Iqbal*] to the jurisdictional allegations in the complaint as opposed to the factual allegations"). See also, *Acute Care Specialists II, Ltd. v. United States*, No. 11-C-465, 2011 U.S. Dist. LEXIS 144155, at *13 (N.D. Ill. Dec. 14, 2011) (applying Iqbal in evaluating status of parties to determine that the court "lacks subject matter jurisdiction" due to jurisdictional requirements for tax claims, Rule 12(b)(1)); *Risktimetry Analytics, LLC v. Altaira*, LLC, 752 F. Supp. 2d 141, 142 (D. Mass. 2010) (applying Iqbal in considering motion to dismiss for lack of personal jurisdiction, Rule 12(b)(2)). Jurisdiction must be pleaded affirmatively. "To invoke the power of the court pursuant to § 1332, allegations of diversity must be pleaded affirmatively. To determine whether a party has adequately presented facts sufficient to establish federal diversity jurisdiction, appellate courts must look to the face of the complaint, ignoring mere conclusory

allegations of jurisdiction." *Martinez v. Martinez*, 62 F. App'x 309, 313 (10th Cir. 2003). If the pleader does not plead the jurisdictional and nothing in the complaint provides the basis for the federal court, then the complaint has to be dismissed.

Further, the Complaint fails to recognize the unsecured creditor, the triggering creditor for the trustee [assuming Mark Frankel stepped into the shoes of the Trustee, which he cannot]. When exercising its powers under § 544(b), the trustee must identify that creditor or class of creditors on whose rights the trustee is depending, sometimes referred to as the "triggering creditor." See, e.g., *MC Asset Recovery, LLC v. S. Co.*, No. 06-0417, 2006 WL 5112612, at *3, 2006 U.S. Dist. LEXIS 97034, at *9 (N.D. Ga. Dec. 11, 2006) ("[I]n order to maintain an avoidance action under § 544(b), a trustee must demonstrate the existence of a so-called „golden" or „triggering" creditor: (1) an unsecured creditor, (2) who holds an allowable unsecured claim under section 502, and (3) who could avoid the transfers at issue under applicable (i.e., state) law."); *Schaps v. Bally"s Park Place, Inc.,* 58 B.R. 581, 584 (E.D. Pa. 1986) ("[A] prerequisite to a Section 544(b) suit is the existence of an actual creditor holding an unsecured claim who could have avoided the transfer under state law."), aff'd, 815 F.2d 693 (3d Cir. 1987); *Young v. Paramount Commc"ns Inc.* (*In re Wingspread Corp.*), 178 B.R. 938, 946 (Bankr. S.D.N.Y. 1995). We do not see any such creditor in this Complaint. See, e.g., *Old Time Enters., Inc. v. Int'l Coffee Corp.,* 862 F.2d 1213 (5th Cir. 1989) (dismissing complaint that reflected "a perhaps somewhat fervid desire to cover all even remotely conceivable theories while retaining a level of generality and indefiniteness that would mask any legal deficiencies and preclude effective

17

challenge. That . . . only leads to essentially nothing being alleged, for the needle in the haystack might as well not be there").

Wherefore, it is respectfully submitted that the Court refrain from adjudicating this matter, as the district court is already seized with the matter regarding dismissal of the complaint and if it does decided to rule on it, then it must recommend its dismissal.

Dated: New York NY
November 22, 2019

/s/karamvir dahiya
Dahiya Law Offices, LLC
75 Maiden Lane Suite 506
New York NY 10038
Tel: 212 766 8000